UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WENDY CAROL RAYMOND,

     Plaintiff,

v.                                             Case No: 8:17-cv-1322-T-30JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Wendy Carol Raymond, seeks judicial review of the denial of her claims for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Court recommends that the decision be affirmed.

## BACKGROUND

### A.    Procedural Background

Plaintiff filed applications for disability insurance benefits and supplemental security income on September 23, 2013. (Tr. 251–63.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 152–58, 18–94.) Plaintiff then requested an administrative hearing. (Tr. 212.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 43–89.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 18–36.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council

denied.  (Tr. 1–4.)  Plaintiff then timely filed a Complaint with this Court.  (Dkt. 1.)  The case is

now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

> **B.    Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1970, claimed disability beginning on January 1, 2012.  (Tr.

251–63.)  Plaintiff has a high school education.  (Tr. 34.)  Plaintiff's past relevant work experience

included work as a medical assistant and a behavioral health technician.  (Tr. 34.)  Plaintiff alleged

disability due to chronic obstructive pulmonary disease ("COPD"), blindness in her left eye, and

a herniated disc.  (Tr. 90.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial

gainful activity since January 1, 2012, the alleged onset date.  (Tr. 23.)  After conducting a hearing

and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe

impairments: degenerative disc disease, occipital neuralgia, COPD, loss of vision in the left eye,

loss of depth perception in the right eye, asthma, hypertension, a major depressive disorder, a mood

disorder, a generalized anxiety disorder, a posttraumatic stress disorder, a history of alcohol abuse,

and a dependent personality disorder.  (Tr. 24.)  Notwithstanding the noted impairments, the ALJ

determined that Plaintiff did not have an impairment or combination of impairments that met or

medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(Tr. 25–28.)  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC")

to perform light work with the following additional limitations:

> [Plaintiff] can only occasionally lift and carry ten pounds, and the claimant can only
> frequently lift and carry ten pounds. The claimant can occasionally climb ramps
> and stairs. The claimant can never climb ladders, ropes, and scaffolds. The claimant
> can occasionally balance, stoop, kneel, crouch, and crawl. With the left eye, the
> following is not present; near acuity, far acuity, depth perception accommodation,
> color vision, and field of vision. With the right eye, frequent depth perception is not
> present. Additionally, the claimant can only have occasional exposure to wetness,
> vibration, fumes, odors, dusts, gases, and poor ventilation. The claimant can only

have occasional exposure to hazards such as moving parts of equipment, tools, or machinery. Moreover, the claimant can understand, carry out, and remember simple instructions consisting of recurrent, uniform steps with only occasional changes in the work setting. Finally, the claimant can have no more than occasional interaction with the general public and coworkers.

(Tr. 28.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible.  (Tr. 29.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform her past relevant work.  (Tr. 34.)  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a produce inspector, mailroom clerk, and laundry sorter.  (Tr. 35.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 35.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential

evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide whether the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239

(11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred by not considering the combined effects of Plaintiff's severe impairments of occipital neuralgia, hypertension, major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and dependent personality disorder; (2) the ALJ failed to incorporate all of Plaintiff's limitations in her hypothetical to the VE; (3) the ALJ erred in evaluating the medical opinions; and (4) the ALJ erred in evaluating Plaintiff's subjective complaints.  For the reasons that follow, it is recommended that these contentions do not warrant reversal.

### A.    Severe Impairments

First, Plaintiff argues that despite finding Plaintiff's occipital neuralgia, hypertension, major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and dependent personality disorder severe impairments, the ALJ did not identify which work restrictions in her RFC accommodated these impairments.  (Dkt. 11 at 3–8.)  Specifically, Plaintiff points to the symptoms caused by these impairments—radiating neck and back pain and headaches caused by occipital neuralgia, heart palpitations and orthostatic episodes caused by hypertension, and panic attacks caused by generalized anxiety disorder, post-traumatic disorder, major depressive disorder, and dependent personality disorder—and argues that the ALJ did not state

how they impacted her RFC assessment.  (*Id.*)  In sum, Plaintiff contends that because the ALJ found these impairments severe, they must be accounted for in the ALJ's RFC assessment.  (*Id.* at 6–7.)

In response, Defendant contends that the ALJ did not err because the mere existence of a severe impairment does not reveal the extent to which they affect her ability to work, which is the relevant inquiry.  (Dkt. 14 at 7–8.)  Defendant is correct.  The "mere existence of [severe] impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination."  *Moore v. Barnhart*, 405 F.3d 1208, 1213, n.6 (11th Cir. 2005); *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 541–42 (11th Cir. 2016) (finding no error when the RFC did not take into account a severe impairment because "[a] conclusion that an impairment is 'severe' for the purposes of step two of the enquiry does not dictate the outcome at step four").

Further, a review of the ALJ's decision shows the ALJ considered each of the symptoms stemming from these severe impairments when evaluating Plaintiff's RFC.  First, the ALJ properly found Plaintiff's allegations about the intensity, persistence, and limiting effects of her neck and back pain and headaches from her occipital neuralgia less than fully credible, as discussed in detail in a later section of this report and recommendation.  *See* discussion *infra* Section D.  Next, regarding her hypertension, the ALJ noted Plaintiff having had a syncope episode due to her hypertension in early 2012, but described follow-up examinations in which the physician found Plaintiff to have clear lungs and normal balance and gait, and saw "no indications of chronic hypertension."  (Tr. 29, 30, 388–91, 395–97.)  Finally, regarding her panic attacks, the ALJ found the medical evidence showed this symptom was controlled with medication and that Plaintiff's ability to work with coworkers demonstrated that "[o]n balance, [Plaintiff] has no more than a

- 6 -

moderate difficulty in this domain due to her mental impairments." (Tr. 27, 33, 759, 769.) Also, to the extent Plaintiff points to the opinion of consultative examiner Dr. Michael Greenberg, who opined that Plaintiff could not work with the public, the ALJ properly discredited this portion of Dr. Greenberg's opinion, as discussed in a later section of this report and recommendation. *See* discussion *infra* Section C.1. Therefore, contrary to Plaintiff's contention, the ALJ considered these severe impairments and the effect of their symptoms on Plaintiff's functioning.

      **B.**      **Hypothetical to the VE**

Plaintiff next argues the ALJ erred by failing to include her step three finding that Plaintiff has moderate limitations in concentration, persistence, and pace in her hypothetical question to the VE. (Dkt. 11 at 8–14.) The ALJ's limiting her RFC to work with simple instructions (Tr. 28), Plaintiff argues, does not account for Plaintiff's moderate concentration, persistence, and pace limitations. (*Id.*) In response, Defendant contends that the ALJ's RFC and hypothetical, in which the ALJ's limiting Plaintiff to understanding, carrying out, and remembering simple tasks with recurrent, uniform steps (Tr. 28, 84) accounted for Plaintiff's moderate limitations maintaining concentration, persistence, and pace. (Dkt. 14 at 8–9.)

When an ALJ determines that the claimant's mental impairments cause moderate limitations in maintaining concentration, persistence, and pace, the ALJ must explicitly include these limitations in the hypothetical question to the VE. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180–81 (11th Cir. 2011). If, however, the "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace . . . limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.* Further, the ALJ can implicitly account for these limitations in the hypothetical to the VE. *Id.* (reversing because "the ALJ asked the vocational expert a

hypothetical question that failed to include or otherwise implicitly account for all of [the claimant's] impairments"); *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 542 (11th Cir. 2016) (concluding that the ALJ's RFC and hypothetical adequately accounted for the claimant's moderate limitations maintaining concentration, persistence, and pace "even if [the ALJ] did not use precisely the same language").

Here, the ALJ's hypothetical neither explicitly nor implicitly accounted for her finding that Plaintiff has moderate limitations in maintaining concentration, persistence, and pace. (Tr. 28, 83–84.) Thus, the ALJ erred unless the ALJ "indicate[d] that medical evidence suggested [Plaintiff's] ability to work was unaffected by this limitation" because Plaintiff can engage in simple, routine tasks or unskilled work. *Winschel*, 631 F.3d at 1181. The ALJ thoroughly analyzed this point:

> [T]he undersigned next looked at the clinical observations of the claimant to gauge the intensity, persistence, and limiting effects of the claimant's mental symptoms. The treatment history is inconsistent and after examining the objective evidence, the undersigned finds that the claimant's mental symptoms did not reach acute levels to warrant significant reductions in mental limitations.

> In 2012, there was little evidence to suggest acute mental impairments as the claimant presented oriented to time, place, and person as well as in no acute distress during clinical treatments (2F/22).

> * * *

> The psychological consultative examiner evaluated the claimant in December 2013. She presented as neatly dressed and groomed, alert, and fully oriented. Her affect was flat, she was tearful, and her mood was depressed and anxious. Her working memory was in the borderline range; her fund of information was low average, as was her arithmetic ability, abstract thinking, and verbal reasoning. Otherwise, her speech was logical, coherent, and goal directed. In addition, there were no indications of delusions, hallucinations, mania (9F/3).

> Clinical examinations in 2015 indicated that the claimant's mental health was largely intact despite continued alcohol abuse and findings of depressed/anxious mood. In May 2015, progress notes revealed that the claimant had an unremarkable mental status evaluation notwithstanding the record quantifying her alcohol intake as imbibing "a beer with lunch." She had a euthymic mood/affect; she presented with intact cognitive functioning; her thought process was logical and organized; there was no evidence of hallucinations, delusions, or

paranoia; and she presented with an interactive, pleasant, and cooperative attitude/behavior with good eye contact (15F/9).

Aside from a decrease in alcohol use to "no recent use", the mental status findings were essentially the same when she visited the same clinic in late July 2015 (15F/l). An August 12, 2015 record showed that she presented with the same mental status findings as well. Moreover, she reported "her mood has improved with Celexa" (21F/l). In mid-September 2015, progress notes revealed that the claimant made subjective allegations of continued nightmares; however, she presented with the same unremarkable mental status finding (22F/5).

Finally, progress notes in January 2016 revealed that the claimant was oriented; she had an intact recent/remote memory; she had an intact recent/remote memory; and she exhibited a normal mood/affect (23F/2).

(Tr. 31–32.)  Upon review of the evidence cited by the ALJ (Tr. 397, 678, 770, 778, 943, 950, 952), the ALJ's finding that Plaintiff's "mental symptoms did not reach acute levels to warrant significant reductions in mental limitations" (Tr. 31) is supported by substantial evidence. Accordingly, Plaintiff's contention does not warrant reversal.  *Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 490 (11th Cir. 2015) (finding no error where the medical evidence supported the ALJ's hypothetical limiting Plaintiff to simple, unskilled, routine, and repetitive tasks); *Brooks v. Comm'r of Soc. Sec.*, No. 8:13-CV-1770-T-30MAP, 2015 WL 892379, at *3 (M.D. Fla. Mar. 2, 2015) (Moody, J.) (concluding that "the ALJ properly accounted for Plaintiff's limitations in social functioning and concentration, persistence, or pace by relying upon the medical evidence that established that Plaintiff is capable of routine tasks on a sustained basis").

Next, the Court rejects Plaintiff's argument that the ALJ failed to include limitations resulting from Plaintiff's occipital neuralgia, hypertension, post-traumatic stress disorder, mood disorder, generalized anxiety disorder, and dependent personality disorder (Dkt. 11 at 9–12), for the reasons set forth in Section A.  *See* discussion *supra* Section A.

Plaintiff's final argument regarding the ALJ's hypothetical is also unavailing.  Plaintiff argues that because the ALJ's questioning the VE about Plaintiff's ability to perform jobs given

her visual impairments (Tr. 86) was not completely transcribed, it is impossible to review the propriety of relying on the VE's testimony.  (Dkt. 11 at 13.)  The Court rejects this argument.  Most importantly, the ALJ expressly accounted for Plaintiff's visual impairments in her RFC assessment by finding Plaintiff's left eye lacking near and far acuity, depth perception, color vision, and a field of vision and finding Plaintiff's right eye lacking frequent depth perception (Tr. 28), which was part of the ALJ's hypothetical to the VE (Tr. 84).  Further, "at her hearing, [Plaintiff] did not object to the VE's testimony or qualifications, offer any evidence controverting the VE" testimony, or even question the VE" about her visual impairments (Tr. 87–89).  *See Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795 (11th Cir. 2011).  For these reasons, it is recommended that Plaintiff's contentions regarding the hypothetical to the VE do not warrant reversal.

### C.    Medical Opinions

Plaintiff's third contention is that the ALJ erred in evaluating the opinion evidence.  When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor.  *Winschel*, 631 F.3d at 1179.  This standard applies equally to the opinions of treating and non-treating physicians.  *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015).  Importantly, however, while all medical opinions must be considered, including opinions regarding a claimant's RFC, a claimant's RFC is a decision "reserved to the Commissioner."  20 C.F.R. § 404.1527(d)(2); *Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 877–78 (11th Cir. 2013).

In determining the weight to afford a medical opinion, the ALJ considers the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to

support or contradict the opinion. *Hearn v. Comm'r of Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015). The medical opinions of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). Good cause exists when the doctor's opinion is not bolstered by the evidence, the evidence supported a contrary finding, or the doctor's opinion is conclusory or inconsistent with his or her own medical records. *Winschel*, 631 F.3d at 1179.

### 1. Dr. Michael Greenberg

The ALJ accorded partial weight to the opinion of consultative examiner Dr. Michael Greenberg. (Tr. 32.) Dr. Greenberg performed a mental status examination of Plaintiff in December 2013. (Tr. 677–79.) Dr. Greenberg opined that Plaintiff is able to handle funds and tend to her personal care, do limited housework, and walk short distances. (Tr. 679.) He opined that Plaintiff's PTSD and depression are "chronic" and have gone untreated. (*Id.*) Thus, he determined that Plaintiff is "not upbeat enough to work with the public." (*Id.*)

The ALJ discounted Dr. Greenberg's opinion that Plaintiff was "not upbeat enough to work with the public," reasoning that the medical evidence after Dr. Greenberg's opinion showed that Plaintiff's condition had improved such that she was capable of working with the general public, although "no more than occasional interaction with the general public." (Tr. 28, 32.) Plaintiff contends the ALJ improperly substituted her opinion for Dr. Greenberg's and erroneously chose only portions of his opinion. (Dkt. 11 at 14–16.) In response, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff's condition had improved and, therefore, the ALJ's decision to discount this portion of Dr. Greenberg's opinion and RFC assessment are supported by substantial evidence. (Dkt. 14 at 6–7.)

Because Dr. Greenberg is a consultative examiner, his opinions are not entitled to the deference normally given treating sources. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding opinions of consultative examining physicians "are not entitled to deference because as one-time examiners they were not treating physicians"); *Crawford*, 363 F.3d at 1160–161 ("The ALJ correctly found that, because [a consultative examiner] examined [claimant] on only one occasion, her opinion was not entitled to great weight."). Further, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Upon review of the evidence dated after Dr. Greenberg's opinion cited by the ALJ, the ALJ's assigning little weight to Dr. Greenberg's opinion that Plaintiff could not work with the general public is supported by substantial evidence. Specifically, the ALJ cited to treatment records from May through September 2015 and January 2016, showing that Plaintiff's cognitive functions are intact, her thought processes were logical, coherent, and goal directed, and she was pleasant and cooperative in examinations. (Tr. 770, 778, 943, 950, 952.) The ALJ recognized Plaintiff's mental and psychological limitations and limited her RFC accordingly. (Tr. 32) ("Mental restrictions to her task assignments and work environment were supported by persistent depressed/anxious mood; working memory that was in the borderline range; and a fund of information, arithmetic ability, abstract thinking, and verbal reasoning that were in the low average range (9 F/3, 15F)."). It is therefore recommended that Plaintiff's contention regarding the ALJ's evaluation of Dr. Greenberg's opinion is unavailing.

### 2. Weight Assigned

Next, Plaintiff contends that while the ALJ summarized the following medical opinions, she did not state the weight she assigned to the opinions of Dr. William Hulley, Dr. Robert D'Amico, Dr. Sustanti Chowdhury, Dr. Vladimir Alexander, Dr. Robert Black, Dr. Arroyo Velez,

Dr. Gregory Gullick, Dr. Weston Connelly, Dr. Kehinde Idowu, Dr. James Powers, Dr. William Lazenby, and Ms. Jillian Lotito, ARNP.  (Dkt. 11 at 17–18.)  In response, Defendant argues that the ALJ properly considered the record as a whole and that the evidence identified by plaintiff consists of progress and treatment notes, not "opinions."  (Dkt. 16 at 2–3.)  Additionally, Defendant argues that to the extent the ALJ erred in not specifically stating the weight of such evidence, the error is harmless.  (*Id.* at 4–5.)

First, Plaintiff does not make any argument about how this alleged error was not harmless. Instead, she cites hundreds of pages of the record without any argument addressing which opinions should have been assigned weight by the ALJ and what affect that would have on the decision. Pursuant to the Court's scheduling order, this conclusory argument may be disregarded.  (Dkt. 10) (ordering that "all discrete challenges must be supported by specific citation to the pages of the record relied upon when discussing the pertinent facts, medical evidence, and opinion evidence and by citation to governing legal authority that supports each challenge. Any contention for which these requirements are not met is subject to being disregarded for insufficient development and denied without further consideration").

Even if considered, however, this claim does not warrant reversal.  While it is error for the ALJ to not state the weight accorded to medical opinions, *McClurkin*, 625 F. App'x at 962, any error is harmless if it did not affect the ALJ's ultimate determination.  *Hunter v. Comm's of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015).  Here, the ALJ determined that Plaintiff has the RFC to perform light work, but with numerous limitations.  (Tr. 28.)  Despite citing hundreds of pages of treatment notes, without any further specificity, Plaintiff does not identify any opinions within the notes that contradict the ALJ's RFC.  *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th

Cir. 2005) (holding that any error in failing to assign weight to medical opinions was harmless where the opinions did not directly contradict the ALJ's findings).

Additionally, a review of the treatment notes does not reveal any contradictory opinions. For example, Plaintiff argues that the ALJ did not state the weight assigned to the opinion of Dr. Robert D'Amico (Tr. 694–714).  (Dkt. 11 at 17.)  Dr. D'Amico found that Plaintiff had suffered permanent, post-traumatic, spinal injuries as a result of a slip-and-fall accident on October 28, 2013.  (Tr. 712.)  Dr. D'Amico's evaluation was incorporated into Plaintiff's final medical examination at Hess Spinal and Medical Centers with Dr. Jerry Karasick.  (Tr. 715–20.)  Dr. Karasick stated that Plaintiff suffered "severe structural weakness" to the spine and suggested a 10% partial spinal impairment.  (Tr. 720.)  The ALJ specifically gave little weight to the "conclusory assessment" of a 10% impairment, but gave "[s]ome deference" to Plaintiff's "exertional, postural, and environmental limitations due to findings of 'severe' structural weakness to the spine by clinician report, even though the objective findings temper the magnitude of the characterization."  (Tr. 31.)  Neither Dr. D'Amico's nor Dr. Karasick's opinions are inconsistent with the ALJ's determinations of Plaintiff's impairments and RFC limitations.

Plaintiff also argues that the ALJ did not state the weight assigned to the opinions of Drs. William Lazenby (Tr. 575–76) and James Powers (Tr. 577–78).  (Dkt. 11 at 17.)  Dr. Lazenby stated his impression that Plaintiff had commotion retinae in her left eye, cataracts in both eyes "causing no visual symptoms," and possible glaucoma in each eye.  (Tr. 575.)  Dr. Powers stated his impression that Plaintiff had mild senile cataracts and ocular hypertension.  (Tr. 578.)  Neither of these opinions are inconsistent with the ALJ's determination that Plaintiff's left eye lacks "near acuity, far acuity, depth perception accommodation, color vision, and field of vision," and that her right eye lacks "frequent depth perception"  (Tr. 28).  *See Wind v. Barnhart*, 133 F. App'x 684,

690 (11th Cir. 2005) (holding that "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work") (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

Moreover, Defendant argues that not all treatment notes constitute "medical opinions." (Dkt. 16 at 3.)  Medical opinions are "statements from physicians and other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairment." *Tavarez v. Comm'r of Soc. Sec.*, 638 F. App'x 841, 846 (11th Cir. 2016) (citing *Winschel*, 631 F.3d at 1178–79).  "A medical provider's treatment notes may constitute medical opinions if the content reflects judgment about the nature and severity of the claimant's impairments."  *Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 811 (11th Cir. 2017).  Among the hundreds of pages cited by Plaintiff, there are numerous documents that contain no medical opinions at all, including referrals, invoices, forms, and test results.  *See id.* at 812 (explaining that a referral did not contain a "judgment about the 'nature and severity' of Lara's impairments").

To the extent the pages cited by Plaintiff contain documents that are not medical opinions, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence," as long as the ALJ properly considers the claimant's medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  The ALJ's thorough discussion of Plaintiff's medical history (Tr. 24–34) demonstrates that the ALJ considered Plaintiff's medical condition as a whole, including the treatment notes from numerous doctors over the relevant years.  *See Dyer*, 395 F.3d at 1211.  Thus, the ALJ's determinations are supported by substantial evidence.

### D.      Pain

Plaintiff's final challenge to the decision is that the ALJ improperly discredited Plaintiff's claims of disability.  (Dkt. 11 at 18–20.)  When determining whether a claimant is disabled, in addition to objective record evidence, the ALJ must consider the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529.  To evaluate whether a claimant has established disability through the claimant's testimony of pain and other subjective symptoms, the ALJ must apply the following test: first, whether there is evidence of an underlying medical condition and, second, whether there is objective medical evidence substantiating the severity of the pain from the condition or whether the medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see* 20 C.F.R. § 404.1529.

If an ALJ determines that the claimant's medical condition could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms, including pain, to determine their effect on the claimant's capacity to work.  20 C.F.R. § 404.1529(c)(1); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776–77 (11th Cir. 2010). The ALJ considers all available evidence, including objective medical evidence, statements from the claimant, treating physicians, and non-treating physicians, and medical opinions.  20 C.F.R. § 404.1529(c)(1)–(2).  In addition to objective medical evidence, the ALJ considers other information claimant provides, such as (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant took to alleviate pain or other symptoms; (5) treatment, other than

medication, the claimant received for relief of pain or other symptoms; and (6) any measures the claimant personally used to relieve pain or other symptoms.  *Id.* §§ 404.1529(c)(3), 416.929(c)(3).

An ALJ's determination of the credibility of a claimant's testimony regarding subjective pain and other symptoms is entitled to deference and a reviewing court will not disturb a clearly-articulated credibility finding with substantial supporting evidence in the record.  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  Thus, if an ALJ discredits a claimant's testimony, the ALJ must articulate, explicitly and adequately, reasons for not crediting the testimony.  *Holt*, 921 F.2d at 1223–1224.  On appeal, "[t]he question is not . . . whether ALJ could have reasonably credited [claimant's pain] testimony, but whether the ALJ was clearly wrong to discredit it."  *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938–39 (11th Cir. 2011) (finding that substantial evidence supported the ALJ's decision to discredit claimant's pain testimony because the testimony was inconsistent with claimant's testimony regarding his daily activities and with the records from his treating and examining physicians, showing claimant was capable of doing light work); *Dyer*, 395 F.3d at 1212 (reversing the district court's reversal of the ALJ because "the district court improperly reweighed the evidence and failed to give substantial deference to the Commissioner's decision" to discredit claimant's pain testimony).

The ALJ found Plaintiff's disability allegations not fully credible.  (Tr. 33.)  Plaintiff challenges this finding for two reasons: (1) the ALJ addressed evidence supporting her finding but ignored evidence weighing against it and (2) the ALJ improperly considered Plaintiff's substance abuse history.  First, Plaintiff contends the ALJ cited to "normal clinical findings" to support her credibility assessment while not addressing the following negative clinical findings: (1) Dr. Chowdhury's reports that Plaintiff had palpable trigger points in her back and shoulders and could not afford the treatment for her neck and back pain and headaches (trigger point and epidural

- 17 -

injections and occipital nerve blocks); and (2) Plaintiff's statement that her medication took "the edge off" her pain rather than the ALJ's finding that it improved her pain.  (Dkt. 11 at 18–19.)

     In finding Plaintiff's allegations of pain not fully credible, the ALJ reviewed and cited clinical examinations, making the following findings relevant to Plaintiff's argument: "pain alleviation with Norco . . . improved headache pain with injections."  (16F/8, 13, 18F/13, 21, 23, 27, 30)."  (Tr. 33.)  The ALJ cited treatment records by Dr. Chowdhury spanning from December 2013 through October 2014.  (Tr. 883, 891, 893, 897, 900.)  Dr. Chowdhury's December 2013 treatment notes showed that Plaintiff had palpable trigger points in her back and that Dr. Chowdhury recommended trigger point and steroid injections.  (Tr. 900.)  In January 2014, Plaintiff reported throbbing, shooting pain in her neck, lower back, left leg, and shoulder and had muscle tenderness in her back upon examination.  (Tr. 897.)  In February 2014, Plaintiff again reported sharp, burning, constant pain in her neck and lower back.  (Tr. 893.)  Dr. Chowdhury administered an occipital nerve block.  (*Id.*)  In April 2014, Plaintiff reported the same amount of neck and back pain as she had in February 2014, and reported that her headaches improved with the injection.  (Tr. 891.)  Dr. Chowdhury refilled Plaintiff's medication "as it remains helpful with her pain management," but reported that while Plaintiff should continue with injections, she is unable to pay for this treatment.  (*Id.*)  Finally, Dr. Chowdhury's October 2014 treatment records also show that Plaintiff continued reporting significant pain and expressed her interest in continuing injections, although she could not afford it.  (Tr. 891.)  Plaintiff also reported that her medication is "helpful to take the edge off of her pain."  (*Id.*)

     It appears that Plaintiff consistently reported intense pain to Dr. Chowdhury, reported some alleviation with medication, and reported being unable to continue with the recommended injection therapy due to financial constraints.  Nonetheless, the Court is mindful of the deferential review

of the ALJ's factual findings; "[e]ven if the evidence preponderates against the Secretary's factual findings, [courts] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Based upon a review of Dr. Chowdhury's treatments records, as set forth above, it cannot be said that the ALJ's decision is not supported by substantial evidence.

Next, the ALJ considered issues regarding Plaintiff's substance abuse when discrediting her pain and symptom allegations:

> Regarding the claimant's substance use, the claimant testified that she was dismissed from Dr. Chowdhury for cocaine use in November 2015 and explained that she used without her knowledge to alleviate dental pain after she missed an appointment to obtain her prescription pain medication. She testified that it was the only time she consumed cocaine, yet laboratory reports in January 2015 also indicated positive findings for cocaine use (20F/39). The claimant also had an explanation for other drug related issues, including court cases when she reported that the drugs belonged to friends/family. Moreover, she was reportedly counseled to stop smoking and drinking; yet, she continued despite the doctor's orders (2F/52, 9F/2, 15F/9, 16F/27, 18F/l-2, 19F/l, 20F/30). . . . All these facts diminish the veracity of the claimant's self-reported symptoms.

(Tr. 33.) Plaintiff argues that this is an inappropriate consideration given Plaintiff's "willingness to admit to such use" and there is no evidence that Plaintiff would not testify accurately and truthfully. (Dkt. 11 at 19.) In response, Defendant reiterates the ALJ's findings and states that they are supported by substantial evidence. (Dkt. 14 at 12–13.)

As recited above, in evaluating a claimant's credibility, the ALJ may choose to discredit a claimant's testimony about his or her symptoms. In doing so, the ALJ considers "all of the available evidence, including [claimant's] medical history, the medical signs and laboratory findings, and statements about how [claimant's] symptoms affect [claimant]." 20 C.F.R. § 404.1529(a). The Social Security Administration emphasizes that ALJs are not evaluating a claimant's character or truthfulness:

Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities.

Evaluation of Symptoms in Disability Claims, SSR 16-3p, 81 Fed. Reg. 14166-01, 2016 WL 1119029 (Mar. 16, 2016).[1]  Accordingly, the ALJ may not base his or her credibility determination on claimants' statements that are unrelated to the claimant's impairment.  Here, the ALJ erred in doing so.  However, given that the ALJ also based her credibility finding on the findings discussed above and Plaintiff's activities of daily living (Tr. 33–34), the ALJ's error in evaluating Plaintiff's truthfulness and character was harmless.  *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding ALJ error harmless where the error did not affect the decision).

---

[1] Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Social Security Administration.  *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990).  Although they are not binding, they are accorded deference.  *De Olazabal v. Soc. Sec. Admin., Comm'r*, 579 F. App'x 827, 832 (11th Cir. 2014).

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED**:

1.  The decision of the Commissioner be **AFFIRMED**.

2.  The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on June 13, 2018.


_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.


Copies furnished to:
The Honorable James S. Moody, Jr.
Counsel of Record